Filed 7/8/21  Sorensen v. Tran CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA


| | |
|---|---|
| ANN SORENSEN, | D077620 |
| Plaintiff, Cross-defendant and Respondent, | |
| v. | (Super. Ct. No. 37-2016-00041963-CU-OR-CTL) |
| THU DUNG TRAN, | |
| Defendant, Cross-complainant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Thu Dung Tran, in pro. per., for Defendant, Cross-complainant and Appellant.

Robert Jeffrey Sutton for Plaintiff, Cross-defendant and Respondent.

Defendant, cross-complainant and appellant Thu Dung Tran appeals from a judgment on an accounting bench trial that took place after a partition trial and sale of real property Tran owned with her sister, plaintiff, cross-defendant and respondent Ann Sorensen.  Following trial on how to equitably divide the sales proceeds, the trial court ruled it would not reimburse the

parties' expenses incurred before August 20, 2015, the date the parties' respective ownership interests were adjudged in a separate quiet title trial, characterizing all such payments as gifts. The court also declined to award any reimbursement for mortgage payments, limiting reimbursement to property taxes and insurance, which it found were legally or financially necessary to preserve the property. Tran contends the court erred by these rulings; that it abused its discretion and erred in applying the law when it (1) refused to permit Tran to present evidence of her mortgage payments, repairs and improvements incurred prior to the quiet title judgment; (2) classified her expenses for mortgage payments, repairs and improvements as gifts with no right of reimbursement; and (3) applied res judicata to the quiet title judgment. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

The trial court issued a statement of decision in the partition trial reciting some of the procedural history and underlying facts, and also made findings in its judgment following the accounting trial. Because there is no indication Tran challenged those findings and conclusions below, we accept them in stating the background facts and liberally construe them to support the judgment, drawing all reasonable inferences in support of the findings. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981; *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 761.) We consider other evidence in the light most favorable to the prevailing party. (*Thompson*, at p. 981.) We indulge all presumptions in favor of the judgment's correctness and infer the court impliedly made every factual finding necessary to support its decision. (*Ibid.*)

---

[1] Some of the facts underlying the parties' dispute over the ownership of the subject real property and their quiet title bench trial is set forth in our prior unpublished opinion, *Sorensen v. Tran* (Feb. 23, 2018, D071232).

2

After family disputes arose over ownership of a San Diego residence purchased in 1976 by the parties' parents, the parties participated in a bench trial on Sorensen's claim for quiet title. In an August 2015 statement of decision, the trial court in that action, Judge Gregory Pollack, found based on certain deed transfers that Sorensen owned 62.5 percent of the property and Tran's two children owned a combined 37.5 percent. On Tran's appeal, this court in February 2018 affirmed that judgment. (*Sorensen v. Tran, supra*, D071232.)

Following conclusion of the quiet title bench trial, Sorensen filed a complaint for partition against Tran's children, who she alleged were part owners of the property as tenants in common. Sorensen asked that the property be partitioned by sale and that she be reimbursed for sums advanced by her. Sorensen eventually amended her complaint to remove Tran's children as defendants and replaced them with Tran, as Tran's children in 2017 or 2018 had assigned their rights in the property to Tran.

The matter proceeded to a February 2019 partition bench trial before Judge Joel Wohlfeil, who in a February 5, 2019 statement of decision assessed the credibility of the parties and witnesses and accepted the parts of their testimony he found truthful.[2] Judge Wohlfeil ruled the property would

---

[2] In part, the court's statement of decision states: "[Tran's daughter], Defendant, [Tran's son], and Plaintiff testified to his or her recollection of events which took place years ago. The recollection of these witnesses have been influenced by their bias, prejudice or personal relationship with the parties involved in this case. If for no reason other than the passage of time, the Court questions the capacity of the witnesses to accurately recollect and communicate his or her perception of the events. The witnesses have 'testified untruthfully about some things but told the truth about others' and, accordingly, the Court has accepted the part it perceives to be true and has ignored the rest." The statement of decision also quotes from the parties' joint trial readiness report discussing what the evidence would show.

be listed for sale and sold forthwith, after which the court would determine the ultimate distribution of the sale proceeds.

In June 2019, the court entered an interlocutory judgment of partition, finding "based on the record" that Tran was entitled to a credit for her disproportionate payment of property taxes, Sorensen was entitled to a credit for her payment of the property's insurance, and that neither party was entitled to a credit or debit for repairs, improvements or destruction of the property. The court stated it would decide the final adjustments after the sale and deposit of sales proceeds, and a hearing on adjustments and distributions. It deferred Tran's request to present evidence on her right to reimbursement.

After the parties sold the property and deposited approximately $510,000 in an escrow account, the court set the matter for a November 2019 trial to determine allocation of those proceeds. The court ordered the parties to submit their evidence via declaration. Both parties submitted trial briefs with exhibits and Tran submitted a sworn declaration about her claimed expenditures.[3]

---

[3] In part, Tran's declaration admits that even though the court found Sorensen the owner of 62.5 percent of the property, Tran "still treated the house like I was the owner, because I believed, and continue to believe, that I was." She averred she had paid money to her parents for the property and was the obligor on a $40,000 note encumbering it, but she "did not take the title, partly because of family and partly because I thought it proper to wait till I paid off the $40,000 loan." Tran stated that in 2004 she paid off a loan on the property even though her mother's name was still on the deed, and her mother refused to quitclaim her interest to Tran. She also averred that at some point she granted the property to her children, but they later turned ownership back over to her when the property became tied up in litigation. Tran averred, "I spent extensively for improvements and repairs." Though Tran claimed she paid all the insurance premiums, waste and wastewater

4

At the outset of the accounting trial, the court reiterated some of its rulings from its prior statement of decision in the partition trial, stating in part: "I have already determined that neither side will get a credit or be debited for repairs, improvements, or destruction of the property. That is not going to be a part of our discussion." In response to the court's questions, Tran's counsel represented that the property's mortgage was paid off in 2004. The court then stated: "So the court will not be taking any evidence on the subject mortgage payments, unless either side can give me a good reason to do so. The limited items that the court will be receiving damages on are those which were legally or financially necessary to preserve the property, which from the court's perspective includes, and may be limited to, taxes and insurance—mortgage payments are no longer a part of the equation, because that was long before, paid for before the Court of Appeal affirmed the trial court's discretion, at which time plaintiff was awarded a 62.5 percent interest in the property, and defendant 37.5 percent. I understand from reading [Tran's] trial brief that [Tran] would like to go back decades, maybe 1980's or something. The court is not going to allow that to occur. There is simply too much history, too much acrimony, too much controversy, too much conflict. There is simply not enough . . . good reason for the court to reach back that far.

". . . I don't question[ ] that [Tran] made what she considered to be generous contributions to preserve the property well before the first lawsuit was filed. I don't doubt that. . . . It was a value. But I also noted keenly, with interest, that [Tran] made those payments assuming she owned the property. And ultimately, Judge Pollack decided that the property was

invoices, and utility bills, she stated she "didn't anticipate that I would be in litigation, so I didn't save all my checks and invoices."

5

owned, . . . 62.5 percent by [Sorensen] and 37.5 percent by [Tran]. The court looks at all of those past payments as a gift and will not revisit them.

"So . . . the relevant time frame within which we are going to limit our discussion today is from the date that the first case became final, and the limited items—and I am going to hear from [Sorensen] and I am going to hear from [Tran's] counsel . . . and if I am missing something, let me know. But the limited items will be those that were necessary to preserve or sustain the property. Right now, I perceive that to be limited to property taxes and insurance."

During the accounting trial, the court took evidence concerning the parties' claims for tax and insurance payments, as well as Tran's claim and Sorensen's denial that Sorensen took in rental income. The court admitted into evidence Tran's compilation of expenses she claimed to have incurred since 1976.[4] Sorensen challenged Tran's payments in part by asserting that Tran's supporting documentation of property tax payments showed based on the tax ID number they were paid on a different piece of property.

---

[4] In admitting the document, identified as Exhibit 108, into evidence, the court explained to Tran's counsel: "I don't know if your client or either party is going to feel so strongly about what I am doing here today that they will want to appeal. But I want the Court of Appeal to have a record of your position which in large part I am overruling, and ruling against you, but at least the Court of Appeal will have this piece of paper that they can look at. So Exhibit 108 will be admitted." Tran's counsel summarized that document in the record: "Exhibit 108 shows property taxes that were paid were $72,094.19. Mortgage payments, between 1976 and 2004, including the payoff, $242,898. Repairs . . . $56,136. And insurance, $24,136.14. And then there was a rental tax that was paid to the City of San Diego between 2005 and 2010, totaling $340." On repairs, Tran's counsel stated that Tran paid $11,500 in 2016 and 2017. Counsel stated other exhibits showed Tran paid property taxes for 2015 to 2019. Exhibit 108 does not appear in the record.

6

The court declined to accept the parties' verbal testimony to corroborate insurance payments. It denied Tran's request for reimbursement of rental income that she believed Sorensen had received, finding Tran did not meet her burden of proof on that point. The court declined to accept Tran's testimony that she paid $7,721.84 in taxes. The court and parties went over the payments that the parties had corroborated with checks or other writings. It awarded Tran a credit of $20,166.22, and Sorensen $1,933.42, for taxes they paid on the property. The court ruled neither party carried their burden of proof for any amounts larger than those. The court credited Sorensen $2,622 for insurance. It awarded common benefit attorney fees to Tran's counsel.[5]

Tran's counsel thereafter sought to make a record of an alleged $140,000 loss in value to the property due to vandalism. The court responded: ". . . I have already said that I am not going to credit or debit either side for alleged vandalism, improvements, repairs that either side have made. Counsel, again, from the court's perspective, and I don't mean to be disrespectful, this has been a very difficult factual conflict to sort out. There have been accusations flying every which way. No one seems to agree upon anything, so I am just finding that whoever is making the allegation, other than those findings I have made, has failed to carry their burden of proof."

The court entered judgment in accordance with its rulings, finding the "relevant amounts are expenditures after August 20, 2015, when Judge Pollack issued a Final Statement of Decision . . . in [the] prior case between the parties." The court characterized all expenditures made before that date

---

[5] The awarding and amount of common benefit attorney fees is not at issue in this appeal.

as gifts, including expenditures listed by Tran in her compendium. It denied Tran's request for rental income allegedly received by Sorensen, denied the request to assess the parties for vandalism, and denied the requests to be reimbursed for repairs.

Tran filed this appeal from the judgment.

DISCUSSION

I. *Basic Appellate Principles*

Our consideration of Tran's claims is guided by settled appellate principles: " 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see *Thompson v. Asimos*, *supra*, 6 Cal.App.5th at p. 981.) The burden is on Tran as the appellant to demonstrate, on the basis of the record presented to this court, as well as reasoned arguments and relevant legal authority, that the trial court committed an error that justifies reversal of the judgment. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; *In re A.C.* (2017) 13 Cal.App.5th 661, 672.) It is Tran's burden to ensure the appellate record is adequate to review her claims, and the failure to provide an adequate record ordinarily results in affirmance of the judgment. (*Ibid.*; see *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [" 'if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed' "]; see also *Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 46 ["Where the [appellant] fails to furnish an adequate record of the challenged proceedings, his claim on appeal must be resolved against him"].) This is

8

because without an adequate record, we must presume the appealed judgment is correct. (*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 644.)

It is also an appellant's burden to establish prejudice, that is, that any error resulted in a miscarriage of justice. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800-801; *Hoffman Street, LLC v. City of West Hollywood* (2009) 179 Cal.App.4th 754, 772; Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim*, at p. 800.)

## II. *Legal Principles and Standard of Review*

A partition action is governed by broad principles of equity jurisprudence. (*Wallace v. Daley* (1990) 220 Cal.App.3d 1028, 1035; see Code Civ. Proc., § 872.140 [trial court "may, in all [partition] cases, order allowance, accounting, contribution, or other compensatory adjustment among the parties according to the principles of equity"]; *Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 596.) A court of equity has "broad powers and comparatively unlimited discretion to do equity without being bound by any strict rules of procedure." (*Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 766.)

We review the court's interlocutory judgment of partition for abuse of discretion. (*Cummings v. Dessel, supra*, 13 Cal.App.5th at p. 597.) "Under that standard, '[t]he trial court's "application of the law to the facts is reversible only if arbitrary and capricious." ' " (*Ibid*.) A court will abuse its discretion if its disposition rests on an error of law. (*Ibid*.) Further, "[e]very

9

partition action includes a final accounting according to the principles of equity for both charges and credits upon each co[-]tenant's interest. Credits include expenditures in excess of the co[-]tenant's fractional share for necessary repairs, improvements that enhance the value of the property, taxes, payments of principal and interest on mortgages, and other liens, insurance for the common benefit, and protection and preservation of title." (*Wallace v. Daley*, *supra*, 220 Cal.App.3d at pp. 1035-1036.) When a court makes rulings based on equitable considerations, we likewise review the rulings for abuse of discretion. (*Lin v. Jeng* (2012) 203 Cal.App.4th 1008, 1025.)

A ruling based on findings unsupported by substantial evidence is itself an abuse of discretion. (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681.) Under the substantial evidence standard, " ' "the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.]' [Citation.] 'In applying this standard of review, we "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . ." [Citation.]' [Citation.] ' "Substantial evidence" is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value.' [Citation.] We do not reweigh evidence or reassess the credibility of witnesses. [Citation.] We are 'not a second trier of fact.' " (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245-1246.)

III. *Claim that Court Erred by Excluding Evidence of Tran's Expenses*

Tran contends Judge Wohlfiel abused his discretion by refusing to permit her to submit evidence for expenses she incurred for mortgage payments, repairs and improvements to the property, limiting the parties to recovering expenses incurred after Judge Pollack's August 2015 statement of decision, and allowing reimbursement only for taxes, insurance and attorney fees. She asserts the court erred by "arbitrarily" limiting her evidence in the accounting trial "[b]ecause the 2015 . . . judgment did not implicate the partition and accounting aspects of the case . . . ." Tran argues expenses such as mortgage, tax and loan payments are "typically allowable partition expenses for reimbursement," and the court's error caused her to lose more than $300,000 in reimbursable expenses.

In part, Tran's claim is unsupported by the record. As we have summarized above, the reporter's transcript of the accounting trial shows the trial court in fact considered Tran's evidence; it admitted Tran's Exhibit 108, which was a compilation of her purported expenses. While the court ruled against Tran by declining to award some of the expenses for which she sought reimbursement, it did not prevent her from introducing her evidence on these items at trial.

As for Tran's assertion that the court erred by declining to award her reimbursement for repairs and improvements, both the court's February 5, 2019 statement of decision and its interlocutory judgment of partition show that during the partition trial it considered the parties' claims for repairs and improvements, and determined specifically based on the parties' credibility and that of other witnesses that neither party would be credited for those.

In light of these circumstances there are multiple problems with Tran's contentions. First, "an interlocutory judgment in an action for partition determining the rights and interests of the respective parties and directing

11

partition to be made" is immediately appealable. (Code Civ. Proc., § 904.1, subd. (a)(9); *Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 141.) Tran could have appealed from the court's June 28, 2019 interlocutory judgment but did not, rendering her challenge to the trial court's findings untimely. (See *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583.) Second, the record contains no reporter's transcript of the February 4, 2019 partition trial. In the absence of a reporter's transcript, we cannot evaluate whether substantial evidence shows Tran made reimbursable *necessary* repairs and improvements enhancing the value of the property, but must presume the court "acted duly and regularly and received substantial evidence to support its findings" to the contrary. (*Stevens v. Stevens* (1954) 129 Cal.App.2d 19, 20; see also *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 576; *In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [appellant who does not supply a reporter's transcript "will be precluded from raising an argument as to the sufficiency of the evidence"].) Third, even setting aside those problems, as a reviewing court assessing the evidence we are not permitted to reweigh the evidence or reevaluate the parties' credibility, which was the basis for the trial court's ruling. (*People v. Albillar* (2010) 51 Cal.4th 47, 60 [" 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility' "]; *Scott v. Staggs* (1954) 129 Cal.App.2d 54, 58-59 [in an accounting trial, "[t]he weight and sufficiency of the evidence, the construction to be put upon it, and the inferences to be drawn therefrom, as well as the question of the credibility of the witnesses and the determination of conflicts and inconsistencies in the testimony, were matters for the trial court"].)

To the extent the trial court reopened consideration of these alleged payments during the accounting trial, we conclude Tran has not established

12

the court abused its discretion or made an error of law in declining to award her alleged payments toward the mortgage, repairs or improvements. Elsewhere in her brief, Tran acknowledges that a cotenant generally is entitled to credit for improvements made in good faith that enhance the value of the property, and cites *Wallace v. Daley*, *supra*, 220 Cal.App.3d 1028 to that effect. But Tran's sole recitation of facts underlying her claim for reimbursement is in the "Introduction" portion of her brief, where she quotes from page four of her trial brief. Tran's trial brief is not evidence. (*In re Marriage of Pasco* (2019) 42 Cal.App.5th 585, 591 ["A trial brief is not evidence, it is argument"].) And the summary of amounts paid in Tran's compilation, which the court admitted into evidence to permit Tran to make a record, does not establish that any of those payments were necessary or increased the property's value. Tran's assertion that her payments "did enhance the property as argued at trial" is unaccompanied by a citation to any evidence.[6] Under the circumstances, we presume the court implicitly

---

6  Tran cites to pages 56 and 57 of the reporter's transcript of the accounting trial. At those pages, Tran's lawyer confirmed that the property was paid off in 2004, and the trial court gave its reasoning concerning why it was not considering evidence as to mortgage payments, why it considered payments made before the August 2015 judgment to be gifts, and why it was limiting its consideration to property taxes and insurance legally and financially necessary to preserve the property. If Tran contends some particular issue of fact is not sustained she " 'must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable.' " (*Pope v. Babick*, *supra*, 229 Cal.App.4th at p. 1246, italics omitted.) Tran's " 'fundamental obligation to this court, and a prerequisite to our consideration of [her] challenge' [citation], is to 'set forth the version of events most favorable to [the judgment].' " (*Ibid.*, italics omitted.) She is required to set forth in their brief all the material evidence on the point and not merely her own evidence, or else waive the error. (*Ibid.*) Because Tran does not set forth evidence supportive of the court's decision, she has forfeited any claim of insufficient evidence. (*Ibid.*)

13

found the evidence did not support Tran's claim for reimbursement, including by finding any payments Tran made were not necessary or added value to the property. (*Thompson v. Asimos*, *supra*, 6 Cal.App.5th at p. 981.)

Tran's argument amounts to a bare assertion that taxes, trust deed payments or money spent in preserving the property are recoverable as a matter of law; she fails to recognize it was for the trial court in this case to assess the evidence in making or declining to make its awards. (See e.g., *Scott v. Staggs*, *supra*, 129 Cal.App.2d at pp. 58-59.) This is recognized in her own cited authority, *Milian v. De Leon* (1986) 181 Cal.App.3d 1185, in which the Court of Appeal, after reciting the general rule concerning reimbursable expenses, stated: "[W]hat [the appellant] fails to deal with is that the court ultimately declined to make an accounting and order reimbursement in this case because it found an agreement between the parties to own and divide the property equally irrespective of the exact dollar contributions of each party to the purchase price or to the subsequent improvement, maintenance, or preservation of the property. The parties were perfectly competent to make such an agreement and the critical question on appeal is whether the court's finding of such an agreement is supported by substantial evidence." (*Id.* at p. 1194.)

Here, Tran's right to be reimbursed was likewise dependent on evidence that the trial court considered but rejected on credibility and other grounds (such as evidence of Tran's lack of ownership during the time she assertedly made mortgage and other payments, discussed below). The court had an "inherent right to disregard the testimony of any witness, or the effect of any prima facie showing based thereon, when [it] is satisfied that the witness is not telling the truth or his testimony is inherently improbable due to its inaccuracy, due to uncertainty, lapse of time, or interest or bias of the

14

witness. All of these things may be properly considered in determining the weight to be given the testimony of a witness although there be no adverse testimony adduced." (*Hunter v. Schultz* (1966) 240 Cal.App.2d 24, 33.) The court can be the final arbiter of credibility based on a party's limited production of receipts. (*Id.* at p. 34.) We will not substitute our views for the trier of fact, which in a partition action is "vested with the discretionary power to do justice to all concerned." (*Shaw v. Shaw* (1964) 227 Cal.App.2d 159, 166.) " '[W]e can only interfere if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' " (*Ibid.*)[7] Tran has given us no reason to disturb the court's ruling declining to order she be reimbursed for payments toward the mortgage, repairs or improvements. She has not met her burden to establish error or prejudice.

---

[7] Our dissenting colleague believes we have misinterpreted the trial court's remarks about controversy and conflict as directed toward the evidence, and making a credibility call. We see no other way to reasonably interpret the court's remark, particularly where it had before it the parties' evidentiary submissions. The court specifically acknowledged the case presented "difficult factual conflict[s] to sort out." Viewing the court's remarks and ruling in the light most favorable to the judgment as we must, we perceive an obvious rejection of Tran's credibility. Its ultimate decision to reject Tran's claim for mortgage reimbursement was well within its equitable power to do "right and justice" without being bound by "rigid dogmas . . . ." (*Nationwide Biweekly Administration, Inc. v. Superior Court of Alameda County* (2020) 9 Cal.5th 279, 300.) We explain below that on this record the court could reasonably conclude Tran acted as a volunteer when she made payments on a property she did not own; its ruling did not contradict a statutory or constitutional requirement (compare *Robin v. Crowell* (2020) 55 Cal.App.5th 727, 753 [statute of limitations; equity cannot controvert "matters that are plain and fully covered by positive statute"]) or create new rights under the guise of equity. (*Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 134.)

15

## IV. *Claim that Court Erred by Classifying Tran's Pre-August 2015 Expenses as Nonreimbursable Gifts*

Tran contends the court erred as a matter of law by characterizing the payments she made before August 2015 toward property taxes, the mortgage, insurance and repairs as nonreimbursable gifts. She maintains the court's decision was "arbitrary" and repeats her assertion that "[t]here was nothing in the 2015 . . . judgment to restrict [her] pre-[August 2015] judgment payments on the property from reimbursement," arguing there was "no rational basis to clump all of the non-reimbursed payments as 'gifts.' " Tran contends she should receive credit for any necessary repairs or improvements she made in good faith, that enhanced the property's value.

We reject these contentions, which suffer from the same flaws described above. Additionally, the trial court expressed a reasonable factual basis for its decision: that Tran made payments towards the property under an incorrect assumption she owned it. Tran's sworn declaration submitted in connection with her trial brief suggests that before 2015 she made mortgage and loan payments believing she was the owner while not being on title. In its statement of decision in the partition trial, the court found Tran's children assigned their rights in the property to Tran in or about 2017 or 2018. Thus, absent a clear ownership interest in the property, the court deemed Tran's pre-August 2015 payments to be nonreimbursable gifts. Tran has not shown this ruling to be an abuse of discretion or unsupported by the evidence.

Tran's summary of various cases do not change this conclusion. In those cases the courts credited parties for payments or improvements based on factual findings from the evidence presented (see *Wallace v. Daley*, *supra*, 220 Cal.App.3d at p. 1038 [Court of Appeal would not disturb trial court's "implied acceptance of [improver's] testimony" that entitled the plaintiff, the

16

improver's successor in interest, to a credit for the increase in value of the residence caused by his improvements]; *Demetris v. Demetris* (1954) 125 Cal.App.2d 440, 441-442 [basing decision on findings "made mainly in conformance with the allegations and testimony of the father" including that parties had an agreement to each pay half the purchase price of the property but that father paid more, entitling him to reimbursement for his greater payments]) or the Court of Appeal merely acknowledged the general rule that a lower court in a partition action may order a compensatory adjustment for separate property funds expended on a down payment. (*In re Marriage of Leversee* (1984) 156 Cal.App.3d 891, 897.) Here the trial court weighed the evidence and made credibility calls in exercising its discretion. Tran has not established an abuse of that broad discretion, so we do not disturb its rulings.

V. *Claim that Court Erroneously Precluded Reimbursement for Pre-August 2015 Expenses on Res Judicata Grounds*

Tran contends the trial court erred by applying res judicata to deny her reimbursement for expenses she paid before entry of the August 2015 judgment. She argues the court "effectively precluded all of that evidence on the basis of res judicata deference to the [August 2015] judgment, but that matter had not been adjudicated by [Judge Pollack] and Tran should not have been foreclosed thereby." Tran maintains "there was no basis in law or equity for Judge Wohlfeil to determine that all Tran['s] expenses prior to [the August 2015] judgment were already decided."

This claim likewise fails for several reasons. As stated above, the trial court made its ruling during the partition trial, and Tran did not appeal from that appealable judgment. Further, there is no indication in the record that the trial court based its ruling on res judicata grounds; Tran's claim is an assumption about the court's reasoning. Finally, even if the trial court did

17

somehow rely on the doctrine of res judicata, Tran does not discuss the doctrine or provide reasoned legal argument with authorities as to why it does not apply.  The omission permits us to disregard the assertions.  (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt"].)

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

I CONCUR:


McCONNELL, P. J.

18

Dato, J., Concurring and Dissenting.

Although I agree with much of the majority opinion, I disagree with its resolution of Thu Dung Tran's claim that she is entitled to be reimbursed for a portion of the $242,898 in mortgage (or trust deed) payments she allegedly made between 1976 and 2004. I would send this case back to the trial court and allow it to redetermine her entitlement to and amount (if any) of reimbursement for these payments.

Fortunately, we do not have to guess or indulge in any presumptions to understand why the trial court denied Tran's mortgage claim. As the majority notes, the judge gave two reasons on the record. " 'When the record clearly demonstrates what the trial court did, we will not presume it did something different.' " (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1550.) Our job is simply to decide if the trial court was correct on either ground.

The first reason given for denying Tran's claim is, in the trial court's words, the "tortured and painful history of this case."

> "There is simply too much history, too much acrimony, too much controversy, too much conflict. There is simply not enough—there is just simply not enough good reason for the court to reach back that far."

The second was that Tran made mortgage payments under the mistaken belief that she had a 100 percent ownership interest in the property. The court believed the legal effect of that mistake was to make her payments gifts:

1

> "[Tran] made those payments assuming she owned the property. And ultimately, Judge Pollack determined that the property was owned . . . 37.5 percent by [Tran]. The court looks at all of those past payments as a gift and will not revisit them."

This gift rationale even found its way into the judgment, which states:

> "The court finds that the relevant amounts are expenditures after August 20, 2015 . . . . The court characterizes all expenditures made prior to that date as gifts. This applies to any expenditures listed in [Tran's] Exhibit 108 [$242,898 claimed mortgage payments] that occurred prior to August 20, 2015."

In my view, neither of these rationales withstands scrutiny.

## A.

It should go without saying that a court may not deny a claim on the grounds that the case has involved "too much acrimony, too much controversy, too much conflict." To be sure, the evidence in this case spans many years and may be difficult to disentangle. And the issues carry emotional baggage for the parties. Sadly, that's not uncommon when siblings fight over their deceased parents' property. As judges, we understand that litigants in such circumstances may not always be at their pleasant best.

The trial judge commented, "This has been a very difficult factual conflict to sort out. There have been accusations flying every which way. No one seems to agree upon anything . . . ." But the acrimony and conflict is, if anything, more reason to *decide* the issues with finality, not to punt. Even litigants who lose can often at least grudgingly accept the result when they know their argument has been heard and the decision is based on a reasoned application of settled law.

The majority does not believe otherwise. Our difference of opinion stems from how we interpret the court's remarks. The majority apparently

2

understands "too much acrimony" and "too much conflict" to refer to conflicts in the *evidence*. From that premise, the majority resolves most of the appellate issues by familiar principles that reviewing courts defer to the trial judge's credibility determinations.

I do not read the trial judge's ruling in this fashion. To begin with, if the judge meant to refer to credibility issues, using the words "acrimony" and "controversy" would be an unusual way of doing so. Perhaps more to the point, the court said this after noting the "painful history of this case" and *before* Sorensen testified. Making the reasonable assumption that a trial judge would not decide witness credibility before the witness testifies, the court's statement about "too much acrimony" and "too much conflict" could only refer to the prior litigation history, and not to a credibility determination based on evidence the court had not yet formally heard.[1]

### B.

The trial court's second rationale—that the pre-2015 mortgage payments were gifts—is largely inconsistent with an expressed intent *not* to decide the issue. More importantly, in my view, it is legally incorrect. A gift requires donative intent, and there is no evidence that Tran intended the payments to be a gift to anyone, much less to Sorenson, her adversary. Tran's attorney aptly stated, "[T]he fact is she believed she was the owner and that the payments were made were not a gift to Miss Sorensen or anyone else, [they] were intended to improve the property and her beneficial interest in the property."

Nevertheless, the majority affirms on the grounds that the trial judge "rejected" Tran's claim "on credibility" grounds. (Maj. opn., *ante,* at p. 14.)

---

[1] I recognize that in a pretrial status conference the court and the parties agreed to a hybrid trial format where each side would submit briefs and declarations with evidence before testimony began.

3

The problem is that the record reflects the exact opposite. As the majority notes, Tran submitted a sworn declaration attesting to her mortgage payments. (Maj. opn., *ante,* at p. 5.) The trial judge *credited* that part of Tran's declaration, stating: "I don't doubt that she made payments" and although the "nature and extent of them may be at issue, but nonetheless, *I don't doubt that Miss Tran made payments.*" (Italics added.) As I read it, the record quite clearly demonstrates that Tran lost the mortgage issue because the trial judge believed those payments were "gifts"—not because he disbelieved she made them.

The majority affirms the trial court's determination that because Tran made those payments "under an incorrect assumption she owned" the property, the court did not abuse its discretion in characterizing those payments as gifts. (Maj. opn., *ante,* at p. 16.) But "[w]here the trial court's decision rests on an error of law, . . . the trial court abuses its discretion." (*People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 742.) If Tran made the payments on the mistaken assumption she was the 100 percent owner of the property, she clearly would not have the donative intent required for making a gift. The premise—Tran made the payments based on a mistake—is completely at odds with the notion that she intended the payments to be a gift to someone else.

"As a general rule, equitable concepts of unjust enrichment dictate that when a payment is made upon a mistake of fact, the payor is entitled to restitution" unless the other party as materially changed her position in reliance on the payment. (*Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 78.) Assuming that Tran made the payments under the mistaken belief she owned the property, she did not make a gift.

4

It is true, as the majority states, that a court of equity has "broad powers" and great discretion. (Maj. opn., *ante,* at p. 9.) But even a court of equity "cannot create new rights under the guise of doing equity. [Citation.] Nor will equity lend its aid to accomplish by indirection what the law forbids to be done directly. [Citation.] Equity follows the law and when the law determines the rights of the respective parties, a court of equity is without power to decree relief which the law denies." (*Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 134.) " 'Equity is bound by rules of law; it is not above the law and cannot controvert the law.' " (*Robin v. Crowell* (2020) 55 Cal.App.5th 727, 753.)

In my view, even allowing for its equitable discretion, the court erred in characterizing Tran's mortgage payments as gifts. I would reverse and remand for a redetermination of that limited reimbursement issue.

DATO, J.